IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KHIN SAN KYI, | |
|       Plaintiff, | |
|    v. | CIVIL ACTION 1:22-cv-6301-PKC-LB<br>Chen, J.<br>Bloom, M.J. |
| 4C FOODS CORP., AMALGAMATED<br>LIFE INSURANCE CO., and<br>TEAMSTERS LOCAL 277 WELFARE<br>FUND, | |
|       Defendants. | |

**TEAMSTERS LOCAL 277 WELFARE FUND
<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ..................................................................................3

     A.    The Welfare Fund ......................................................................................3

     B.    Mr. Win's Lapse in Group Life Insurance Coverage ..................................4

     C.    Ms. Kyi's Claim and Appeal for Life Insurance Benefits ..........................5

PROCEDURAL BACKGROUND............................................................................7

STANDARD OF REVIEW ....................................................................................9

ARGUMENT ......................................................................................................11

I.    MS. KYI LACKS ARTICLE III STANDING BECAUSE SHE HAS NOT AND CANNOT ALLEGE THAT THE WELFARE FUND CAUSED OR CAN REDRESS HER ALLEGED INJURIES. ..............................................................11

II.   MS. KYI FAILS TO STATE A CLAIM AGAINST THE WELFARE FUND....13

     A.    Ms. Kyi fails to allege that Mr. Win was entitled to any life insurance benefits...........................................................................................................13

     B.    The Welfare Fund cannot commit a fiduciary breach because it is not a fiduciary...........................................................................................................15

     C.    Ms. Kyi fails to allege the elements of estoppel in an ERISA context......16

     D.    Ms. Kyi has no basis to bring a claim against the Welfare Fund under the FMLA. ...........................................................................................................19

     E.    ERISA preempts Ms. Kyi's claim for breach of contract.........................20

III.  MS. KYI'S CLAIMS AGAINST THE WELFARE FUND SHOULD BE DISMISSED WITH PREJUDICE. ......................................................................21

CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acosta v. Pac. Enters.*,
  950 F.2d 611 (9th Cir. 1991) ......................................................................15

*Algarin v. NYC Health + Hosps.*
  *Corp*., No. 1: 22-cv-8340 (JLR), 2023 U.S. Dist. LEXIS 108666 (S.D.N.Y.
  June 23, 2023)...........................................................................................22

*Amron v. Yardain Inc. Pension Plan*,
  No. 18 Civ. 11336 (LGS), 2019 U.S. Dist. LEXIS 210096 (S.D.N.Y. Dec. 5,
  2019) ..........................................................................................................21

*Aramony v. United Way Replacement Benefit Plan*,
  191 F.3d 140 (2d Cir. 1999)................................................................16, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................9, 10

*Barrs v. Lockheed Martin Corp.*,
  287 F.3d 202 (1st Cir. 2002) ......................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................9, 10

*Berg v. Empire Blue Cross & Blue Shield*,
  105 F. Supp. 2d 121 (E.D.N.Y. 2000) ................................................16, 19

*Bernstein v. Metro. Life Ins. Co.*,
  453 F. Supp. 2d 554 (D. Conn. 2006).......................................................18

*Bussey v. Fox*,
  No. 9:23-CV-76, 2023 U.S. Dist. LEXIS 143452 (N.D.N.Y. Aug. 16, 2023)............10

*Chojnacki v. Ga.-Pac. Corp.*,
  108 F.3d 810 (7th Cir. 1997) ......................................................................18

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000)..........................................................................21

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)....................................................................................11

*Devlin v. Transp. Commc'ns Int'l Union*,
  173 F.3d 94 (2d Cir. 1999)..........................................................................19

*Dobson v. Hartford Fin. Servs. Grp., Inc.*,
389 F.3d 386 (2d Cir. 2004)...................................................................................18

*E.L. v. Voluntary Interdistrict Choice Corp.*,
No. 4:16CV629 RLW, 2016 U.S. Dist. LEXIS 92058 (E.D. Mo. July 15,
2016) ................................................................................................................12, 13

*Felix v. Simon*,
303 F. App'x 21 (2d Cir. 2008) ..............................................................................22

*Gobeille v. Liberty Mut. Ins. Co.*
(2016) 577 U.S. 312 ...............................................................................................20

*Graziadio v. Culinary Inst. of Am.*,
817 F.3d 415 (2d Cir. 2016)...................................................................................20

*Hannan v. Hartford Fin. Servs., Inc.*,
688 F. App'x 85 (2d Cir. 2017) ..............................................................................16

*Horyczun v. Miller Env't Grp., Inc.*,
No. 22-CV-162 (HG) (SIL), 2022 U.S. Dist. LEXIS 160430 (E.D.N.Y. Sept.
6, 2022) ...................................................................................................................20

*Ingersoll-Rand Co. v. McClendon*
(1990) 498 U.S. 133.........................................................................................20, 21

*Innovative Sports Mgmt., Inc. v. Triangle Eatery & Bar,*
LLC, No. 21-CV-6909 (AMD) (RER), 2022 U.S. Dist. LEXIS 226463
(E.D.N.Y. Dec. 14, 2022) .........................................................................................9

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
62 F.3d 69 (2d Cir. 1995) .......................................................................................10

*JTE Enters., Inc. v. Cuomo*,
2 F. Supp. 3d 333 (E.D.N.Y. 2014) ..........................................................................9

*Justice v. Kuhnapfel,*
985 F. Supp. 2d 334 (E.D.N.Y. 2013) ...............................................................12, 13

*Kraus v. Snow Teeth Whitening LLC*,
No. 20-cv-6085 (JMA)(ST), 2022 U.S. Dist. LEXIS 167176 (E.D.N.Y. Sept.
15, 2022) .................................................................................................................11

*Lee v. Burkhart*,
991 F.2d 1004 (2d Cir. 1993)..................................................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392....................................................11

*Makarova v. U.S.*,
  201 F.3d 110 (2d Cir. 2000)...........................................................................9

*McCabe v. Lifetime Entm't Servs., LLC*,
  No. 17-CV-908-ERK-SJB, 2018 U.S. Dist. LEXIS 3212 (E.D.N.Y. Jan. 4,
  2018) ...............................................................................................................21

*Neurological Surgery, P.C. v. Siemens Corp.*,
  No. 17 Civ. 3477, 2017 U.S. Dist. LEXIS 206010 (E.D.N.Y. Dec. 12, 2017)...........21

*Oliver v. Am. Express Co.*,
  No. 19-CV-566 (NGG) (SMG), 2020 U.S. Dist. LEXIS 76688 (E.D.N.Y. Apr.
  30, 2020) .........................................................................................................11

*Paneccasio v. Unisource Worldwide, Inc.*,
  532 F.3d 101 (2d Cir. 2008)..........................................................................21

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Retirement Plan
  v. Morgan Stanley Inv. Mgmt., Inc.*,
  712 F.3d 705 (2d Cir. 2013)..........................................................................15

*Phifer v. City of N.Y.*,
  289 F.3d 49 (2d Cir. 2002)..............................................................................3

*Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*,
  700 F.2d 889 (2d Cir. 1983)..........................................................................15

*Ranke v. Sanofi-Synthelabo, Inc.*,
  No. 04-1618, 2004 U.S. Dist. LEXIS 22427 (E.D. Pa. Nov. 2, 2004) .......................15

*Reininger v. AZDEL, Inc. Ret. Plan*,
  768 F. Supp. 2d 825 (W.D.N.C. 2011) .........................................................15

*Rivera v. Governor of N.Y.*,
  92 F. App'x 25 (2d Cir. 2004) ......................................................................21

*Rubinstein v. CIGNA Life Ins. Co.*,
  No. CV11-1750(SJF)(WDW), 2011 U.S. Dist. LEXIS 132328 (E.D.N.Y.
  Sept. 27, 2011) ...............................................................................................15

*Support Working Animals, Inc. v. Governor of Fla.*,
  8 F.4th 1198 (11th Cir. 2021) .......................................................................12

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020)....................................................................................11

*Tsirelman v. Daines*,
  19 F. Supp. 3d 438 (E.D.N.Y. 2014), *aff'd*, 794 F.3d 310 (2d Cir. 2015) ....................3

*Walker v. Fed. Express. Corp.*,
   492 F. App'x 559 (6th Cir. 2012) ...................................................12, 16, 19

*Weinrauch v. N.Y. Life Ins. Co.*,
   No. 12 Civ. 5010 (PAC)(FM), 2013 U.S. Dist. LEXIS 8105 (S.D.N.Y. Jan.
   15, 2013) ........................................................................................12

**RULES**

Fed. R. Civ. P. § 4 ........................................................................................9

Fed. R. Civ. P. § 12(b)(1) .........................................................................9, 13

Fed. R. Civ. P. § 12(b)(5) ...............................................................................9

Fed. R. Civ. P. § 12(b)(6) .....................................................................1, 9, 10

Fed. R. Civ. P. § 12(c) .................................................................................24

Fed. R. Civ. P. § 56 .....................................................................................24

**STATUTES**

26 U.S.C. § 2614(a) .....................................................................................19

26 U.S.C. § 2614(c) .....................................................................................19

26 U.S.C. § 2615 .........................................................................................19

26 U.S.C. § 2617 .........................................................................................19

29 U.S.C. § 1104(a)(1)(D) ............................................................................15

29 U.S.C. § 1002(9) .....................................................................................15

29 U.S.C. § 1002(21)(A) .........................................................................15, 16

29 U.S.C. § 1132(a) ..................................................................................7, 21

29 U.S.C. § 1144(a) .....................................................................................20

29 U.S.C. § 1144(c)(1) .................................................................................20

Family and Medical Leave Act.............................................................. passim

**OTHER AUTHORITIES**

29 C.F.R. § 825.104(c)..................................................................................20

29 C.F.R. § 2509.75-8 D-2 ...............................................................................................16

## <u>INTRODUCTION</u>

The Teamsters Local 277 Welfare Fund (the "Welfare Fund") was—at one time—a trust fund that was created between and among the International Brotherhood of Teamsters, Local 277 (the "Union") and contributing employers like 4C Foods Corp. ("4C"). The Welfare Fund was established and maintained for the purpose of providing health and welfare benefits, like group life insurance, for eligible employees of those contributing employers. Amalgamated Life Insurance Co. ("Amalgamated") issued and serviced the relevant group life insurance policy under the Welfare Fund. The Welfare Fund ceased providing benefits in June 2019 due to a cessation of employer contributions and was terminated effective December 2021.

Plaintiff Khin San Kyi ("Ms. Kyi") is the widow of Mr. Tun Win ("Mr. Win") a former employee of 4C. The Welfare Fund sent Mr. Win a notice that his group life insurance would be terminated in May 2019 because the Welfare Fund understood he was no longer eligible, and that he had a deadline to convert his policy to an individual one—which he failed to meet. Mr. Win passed away in 2020. Ms. Kyi now brings this lawsuit against 4C, Amalgamated, and the Welfare Fund seeking $10,000 for the value of Mr. Win's former group life insurance benefit. Ms. Kyi's claims against the Welfare Fund should be dismissed for several reasons:

*First*, Ms. Kyi has not—and cannot—allege that her claimed injuries were caused by the Welfare Fund or could be redressed by a favorable decision against it, so she lacks Article III standing to bring her claims against the Welfare Fund.

*Second*, Ms. Kyi's Complaint fails to state any cognizable claims against the Welfare Fund, and should be dismissed under Fed. R. Civ. P. 12(b)(6):

- Count I – Ms. Kyi was not wrongfully denied life insurance benefits. Mr. Win's participation in the group life insurance policy lapsed, and he did not timely convert it to an individual policy. In addition, he was ineligible for an extension of coverage.

- Count II - There can be no plausible breach of fiduciary duty claim against the Welfare Fund because it is not and was not a fiduciary.

- Count III - Ms. Kyi fails to adequately allege the elements of estoppel in an ERISA context against the Welfare Fund. Ms. Kyi does not allege any material representation by the Welfare Fund that damaged her or any promise by the Welfare Fund that caused her injury, nor the requisite extraordinary circumstances.

- Count V - Ms. Kyi has not and cannot state a plausible Family and Medical Leave Act ("FMLA") claim against the Welfare Fund because it was not Mr. Win's employer.

- Count VI - Ms. Kyi's breach of contract claim is preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

Finally, Ms. Kyi's Complaint should be dismissed with prejudice because the Welfare Fund itself terminated and ceased all operations—it no longer has any assets, employees, or place of business. Any amendment would be futile because, if for no other reason, Ms. Kyi will never be able to allege that the Welfare Fund could redress her alleged injuries.

## FACTUAL BACKGROUND

### A.      The Welfare Fund

Through Mr. Win's employment by 4C, he was a member of the Union. Compl. ¶ 10.[1] Despite the allegation that the Welfare Fund "is a non-profit corporation," it was not.[2] Complaint ("Compl.") ¶ 8; Ex. 1 at 1. The Welfare Fund was a trust fund resulting from an Agreement and Declaration of Trust between the Union, the Merchants Association, and participating employers like 4C. Compl. Ex. R at 118-19, Ex. 1 at 1. The Welfare Fund received contributions from the participating employers for the purposes of providing, in part, group life insurance to the employers' eligible employees. *See* Compl. ¶ 11; Compl. Ex. R at 118-19; Ex. 1 at 1-2; Compl. Ex. A at 16; **Exhibit 2** at 1-2, 6 (Summary Plan Description or "SPD").

Due to serious cashflow issues facing the Welfare Fund resulting from a cessation of employer contributions, the Trustees terminated the Welfare Fund's benefits effective June 30, 2019.[3] Ex. 3; Ex. 4. The Welfare Fund itself terminated on December 31, 2021. Ex. 4.

---

[1] For the purposes of this Motion, unless otherwise stated or otherwise shown by undisputed documents, the allegations in the Complaint are presented without dispute. The Welfare Fund does not concede the truth of any allegations and reserves all available rights.

[2] Exhibit R to the Complaint is an excerpt of the Agreement and Declaration of Trust between the International Brotherhood of Teamsters, Local 277 and, in part, contributing employers. Compl. Ex. R at 118 ("Trust Agreement"). A complete copy of the Trust Agreement is attached as **Exhibit 1**.

[3] The Welfare Fund's June 19, 2019, Summary of Material Modification and the Resolution of Termination of the Welfare Fund are integral to Ms. Kyi's standing to pursue her claims against the Welfare Fund and are attached as **Exhibits 3** and **4**, respectively. When subject matter jurisdiction is at issue, the court may consider relevant documents that are extrinsic to the complaint. *See Phifer v. City of N.Y.*, 289 F.3d 49, 55 (2d Cir. 2002); *Tsirelman v. Daines*, 19 F. Supp. 3d 438, 447 (E.D.N.Y. 2014), *aff'd*, 794 F.3d 310 (2d Cir. 2015)").

### B.  Mr. Win's Lapse in Group Life Insurance Coverage

On April 19, 2019, 4C informed the Welfare Fund that Win "has been on FMLA and recently resigned." Compl. ¶ 24; Compl. Ex. D. On April 24, 2019, the Welfare Fund sent a letter to the address it had on file for Mr. Win (1751 Dahill Road #2R, Brooklyn, NY 11223) which stated that his benefits under the Policy would be cancelled as of May 1, 2019, because he had worked an insufficient number of days in preceding months (the "Cancellation Notice"). Compl. ¶¶ 26, 29; Compl. Ex. E; *see* **Exhibit 5** at 11, 16 (Policy).[4]

The Cancellation Notice stated that Mr. Win had 60 days to convert his life insurance from a group policy to an individual policy. Compl. ¶ 27; Compl. Ex. E. The Policy itself provides that the period to apply to convert from a group policy to an individual policy is extended to 90 days after the change in life insurance status if the individual is not notified in that period. Compl. Ex. Q at 89; Compl. Ex. R at 109; Ex. 5 at 16.[5] The Cancellation Notice also requested that Mr. Win contact the Welfare Fund if he believed its records were incorrect or if he wanted further information about retaining benefits on his own. Compl. Ex. E.

Ms. Kyi alleges Mr. Win did not receive notice of his right to convert because the Welfare Fund sent the Cancellation Notice to the wrong address. Compl. ¶¶ 26, 29, 67. However, the SPD advised participants that it was their responsibility to notify the Welfare

---

[4] The Policy also advises, under title "Individual Terminations," that insurance under the Policy for an individual would end should employment or eligibility end; and that employment would be deemed to end on the first day of the calendar month following a two-month period in which the individual failed to work at least 26 days for participating employers or for whom contributions have not been made for such period. Ex. 5 at 11.
[5] For convenience, June 23, 2019, was 60 days from the date of the Cancellation Notice; and July 30, 2019, was 90 days from the lapse of Mr. Win's coverage. The Welfare Fund ceased providing benefits due to cashflow issues on June 30, 2019.

Fund of a change in address. Compl. Ex. A at 17 (excerpt of SPD showing "Report Any Family Status Changes" in Table of Contents); Compl. Ex. R at 107 (Appeal Denial explaining change of address issue); Ex. 2 at 9 (showing large heading "Report Any Family Status Changes" stating "It is important to notify the Fund Office whenever any of the following changes occur: . . . you change your home address[.]"). Ms. Kyi has not alleged that she or Mr. Win ever alerted the Welfare Fund to an address change. Moreover, the Welfare Fund did not have any reason to believe the Cancellation Notice was not received. Compl. Ex. R at 107.  Nevertheless, as Ms. Kyi acknowledges in the Complaint, even if a member like Mr. Win does *not* receive notice, that just means the conversion period is extended to 90 days. Compl. ¶ 36; Compl. Ex. Q at 89; Ex. 5 at 16.

C.     **Ms. Kyi's Claim and Appeal for Life Insurance Benefits**

On October 28, 2019, Ms. Kyi visited the Welfare Fund office with a social worker and met with the Welfare Fund office manager, Frank Asprea ("Mr. Asprea"). Compl. ¶ 44; Compl. Ex. N at 69. Following that meeting, the Welfare Fund contacted Amalgamated to ask whether there was any basis for coverage for Mr. Win. Compl. Ex. N at 69. Amalgamated replied that there was no basis for coverage because Mr. Win did not timely convert from his group policy to an individual policy. Compl. Ex. N at 69.

On March 9, 2020, counsel from New York Legal Assistance Group wrote Mr. Asprea on Ms. Kyi's behalf seeking an extension of Mr. Win's life insurance coverage under the Policy. Compl. ¶ 55, Compl. Ex. M at 66. On April 10, 2020, Mr. Win passed away. Compl. ¶ 6. The Welfare Fund contacted Amalgamated to ask again whether there was any basis for Mr. Win to be covered. Compl. Ex. R at 69. On May 15, 2020, the Welfare Fund office forwarded Amalgamated's May 13, 2020, response that Mr. Win was

not eligible for a total disability extension of coverage because his coverage had lapsed and was not timely converted. Compl. Ex. N at 69.[6]

On May 15, 2020, counsel for Ms. Kyi emailed the Welfare Fund requesting "Is there any way the Union can work with the life insurance to have them make an exception under these circumstances?" Compl. Ex. N at 70. On August 4, 2020, counsel for the Welfare Fund responded to Ms. Kyi's counsel that "Insofar as [the request for an exception] occurred after the Participant's death, the Fund shall regard it as a claim for payment of a life insurance benefit under the Plan (the 'Claim')" under ERISA. Compl. Ex. N at 70. The August 4, 2020, letter denied Ms. Kyi's Claim based on a review of the Policy and information provided and agreed with the Amalgamated's reasoning for why the Claim should be denied—Mr. Kyi's coverage lapsed, and he was ineligible for an extension. Compl. Ex. N at 70-72.

On September 29, 2020, Ms. Kyi's counsel requested documents relevant to her Claim, and counsel for the Welfare Fund responded in kind on November 2, 2020. Compl. Ex. O; Ex. P. Ms. Kyi, through counsel, appealed the Claim Denial on March 8, 2021. Compl. Ex. Q. Ms. Kyi's appeal made arguments regarding the Cancellation Notice being sent to the address the Welfare Fund had on file for Mr. Win, Mr. Win's purported conversion rights, purported FMLA rights, and the Welfare Fund office manager's purported fiduciary ERISA obligations. Compl. Ex. Q at 93-101.

On March 25, 2021, the Welfare Fund's Board of Trustees considered and denied Ms. Kyi's Appeal. Compl. Ex R at 106. On March 29, 2021, counsel for the Welfare Fund

---

[6] Even if Mr. Win's coverage had not lapsed, disability for the purposes of the Policy would not have occurred until November 2019, five months after the Welfare Fund ceased providing benefits. Compl. Ex. N at 69-70.

wrote Ms. Kyi's counsel a lengthy letter explaining the reasoning behind the denial. Compl. Ex. R at 106-17. The letter explained that the Board agreed that the Welfare Fund properly relied on the address on file for Mr. Win and reasonably assumed that the Cancellation Notice had been received and that any non-receipt of the Cancellation Notice by Mr. Win was attributable to the lack of any change-of-address notice to the Welfare Fund from Mr. Win, rather than a mistake by the Welfare Fund. Compl. Ex. R at 107. As such, no 90-day extension could be granted for lack of notice, causing Mr. Win's conversion period to end on June 1, 2019 (or July 30, 2019, if the 90-day extension *had* occurred). Compl. Ex. R at 107, 109. In short, Mr. Win was neither covered nor entitled to an extension of coverage when the Welfare Fund ceased providing benefits in June 2019 due to cessation of employer contributions. Compl. Ex. R. at 109-11; *see also* Compl. Ex. N at 72.

The Appeal Denial further explained why the FMLA and ERISA arguments in Ms. Kyi's Appeal were inapplicable to the Welfare Fund or incorrect: the Welfare Fund was not Mr. Win's employer, and the Appeal failed to show that Mr. Asprea was a fiduciary. Compl. Ex. R at 108, 112-14. Finally, the letter informed Ms. Kyi of her right to bring a civil action pursuant to 29 U.S.C. § 1132(a), ERISA § 502(a), if she disagreed with the Board's conclusion. Compl. Ex. R at 117.

As noted above, the Trust Agreement and Welfare Fund was terminated effective December 31, 2021. Ex. 4.

<u>**PROCEDURAL BACKGROUND**</u>

On October 4, 2022, Ms. Kyi filed this Complaint. ECF 1. Ms. Kyi failed to effectuate service upon any of the Defendants. ECF 6. On March 3, 2023, United States Magistrate Judge Lois Bloom directed the United States Marshals Service to serve the

summons, complaint, and a copy of her order upon the named Defendants. ECF 5. Prior to its termination, the Agent for Service of Legal Process upon the Welfare Fund was the Fund Administrator, as indicated on the first page of the SPD. Ex. 2 at 1. The SPD also provides that service may be made on any of the Welfare Fund Trustees—all of whom are also identified on the first page of the SPD. Ex. 2 at 1.

The Marshals Service made two efforts at serving process upon the Welfare Fund at its former address (14 Front Street, Hempstead, NY, 11550) during the first week of April 2023. ECF 18. On May 18, 2023, the Marshals Service purported to serve "THERESA" at the "FRONT DESK" on the "3RD FL" at 14 Front Street, Hempstead, NY. ECF 18. Notably, the Teamsters Local 277 Pension Fund, a separate entity, and several other entities appear to do business at 14 Front Street, Hempstead, NY 11550.

Shortly thereafter, on June 2, 2023, counsel for the Welfare Fund wrote the Court a pre-motion letter explaining the nature of this situation, the impossibility of service of process, and reserved all rights and defenses. ECF 20. Counsel for the Welfare Fund noted, however, that all Defendants desired to participate in a settlement conference (*id*.), which the Court then ordered. ECF 21. After Ms. Kyi, or any counsel of hers, failed to join the telephonic conference on June 27, 2023, all parties participated in two in-person settlement conferences in Brooklyn, New York, on July 26, 2023, and August 30, 2023, which were unsuccessful. ECF 26, 30, 31. As a result, the Welfare Fund has no choice but to bring this motion and preserve all rights and defenses with respect to Ms. Kyi's claims.[7]

---

[7] The Welfare Fund respectfully acknowledges the Honorable Magistrate Judge Bloom's admonition at the August 30, 2023, conference to exclude arguments related to insufficient service of process from this motion. As noted above, the Welfare Fund was terminated in 2021. Ex. 4. The 2013 Summary Plan Description for the Welfare Fund makes clear that the Agent for Service of Legal Process for the Welfare Fund is the Fund Administrator or

## STANDARD OF REVIEW

The Welfare Fund seeks dismissal of the claims alleged against it under Federal Rules of Civil Procedure 12(b)(1) and (6).

"[A] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 337 (E.D.N.Y. 2014) (quoting *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000)). "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard [], except that '[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* at 337-38 (quoting *Makarova*, 201 F.3d at 113).

In addition, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable

---

any one of the individual members of the Board of Trustees (the "Trustees"). Ex. 2 at 1. Here, the Marshalls Service did not serve the Fund Administrator or any of the individual Trustees. Instead, the Marshals Service purported to serve someone named "Theresa" who supposedly works at the "Front Desk" on the Third Floor of the commercial office building where the Welfare Fund was once previously located. ECF 18. A simple internet search confirms that several other entities appear to do business at 14 Front Street, Hempstead, NY 11550, including insurance agencies, law offices, and more. Service upon individual with no affiliation to the Welfare Fund, but who just happens to work the front desk in the same building where the Welfare Fund used to be located, is not sufficient under Fed. R. Civ. P. 4. *Innovative Sports Mgmt., Inc. v. Triangle Eatery & Bar*, LLC, No. 21-CV-6909 (AMD) (RER), 2022 U.S. Dist. LEXIS 226463, at *13-14 (E.D.N.Y. Dec. 14, 2022) (service upon a co-occupant who lived in a different apartment within the same building did not satisfy burden to prove proper service). For these reasons, the Welfare Fund maintains that service on the Welfare Fund was not proper under the Federal Rules, and the claims against the Welfare Fund should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider documents integral to the complaint upon which the plaintiff relied in drafting the pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Bussey v. Fox*, No. 9:23-CV-76 (DNH/ATB), 2023 U.S. Dist. LEXIS 143452, at *4 (N.D.N.Y. Aug. 16, 2023); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). For this reason, the Court may consider the Trust Agreement (excerpt attached to Complaint at Ex. R at 118), the SPD (excerpt attached to Complaint at Ex. A, referenced at Compl. ¶ 15), the June 2019 Welfare Fund Summary of Material Modification (referenced in ¶ 36 of the Complaint and relevant to Ms. Kyi's standing to bring her claims against the Welfare Fund), the Resolution of Termination (referenced in ¶ 36 of the Complaint and relevant to Ms. Kyi's standing to bring her claims against the Welfare Fund), and the Policy itself (referenced in ¶¶ 20, 36, 67 of the Complaint and throughout the Claim and Appeal exchanges in Compl. Exs. M, N, Q, and R) because they are referenced, cited, or partially attached to the Complaint and are integral to Ms. Kyi's claims.

## ARGUMENT

**I.**     **Ms. Kyi lacks Article III standing because she has not and cannot allege that the Welfare Fund caused or can redress her alleged injuries.**

Ms. Kyi bears the burden of establishing Article III standing with respect to each claim she brings. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 337 (2006). To meet this burden, in relevant part, Ms. Kyi must allege that the Welfare Fund: (1) caused her alleged injury, and (2) can redress her alleged injury. *See Kraus v. Snow Teeth Whitening LLC*, No. 20-cv-6085 (JMA)(ST), 2022 U.S. Dist. LEXIS 167176, at *8 (E.D.N.Y. Sept. 15, 2022); *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020). "'[C]ausation' and redressability' require a plaintiff to demonstrate that the 'injury-in-fact' she suffers is 'fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision.'" *Oliver v. Am. Express Co.*, No. 19-CV-566 (NGG) (SMG), 2020 U.S. Dist. LEXIS 76688, at *13-14 (E.D.N.Y. Apr. 30, 2020); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014.

*First*, Ms. Kyi has not and cannot allege that the Welfare Fund *caused* her alleged injuries. The Welfare Fund did not cause Mr. Win's group life insurance policy to lapse or cause any failure to convert it to an individual policy. On the contrary, Ms. Kyi acknowledges the Welfare Fund sent Mr. Win the Cancellation Notice with instructions on how to convert his policy. Compl. ¶¶ 26, 27. Though she contends Mr. Win did not receive this Cancellation Notice at the correct address, Compl. ¶ 29, she does not allege she ever alerted the Welfare Fund to a change in address in accordance with the SPD's direction to do so. Ex. 2 at 9. In any event, she concedes that there is still a limited 90-day window for those who do not receive notice. Compl. ¶ 36; Ex. 5 at 16 (Policy). Ms. Kyi does not allege

that she or Mr. Win met that deadline.[8] Therefore, Ms. Kyi cannot argue that any lack of notice caused Mr. Win's failure to convert. *See, e.g., Walker v. Fed. Express. Corp.*, 492 F. App'x 559, 566 (6th Cir. 2012) (no ERISA violation where SPD contained notice of conversion right, and defendants mailed conversion notice to last known addresses of participant and had no reason to believe addresses were not accurate).

*Second*, the Welfare Fund is not the entity with responsibility to pay any such life insurance benefit under the terms of the group Policy—Amalgamated is the insurer with responsibility to pay any such group benefit. Ex. 5 at 7, 16 (Page 7 states "We" is defined as Amalgamated and page 16 states "We" will pay the death benefit…").

*Third*, even if Mr. Win had timely converted his group life insurance benefit to an individual policy, Ms. Kyi has not and cannot allege that the Welfare Fund is responsible for (or capable of) payment of benefits under any such individual policy. The Welfare Fund is an ERISA plan, not an individual policy. *See* Ex. 2 at 6; *see also Weinrauch v. N.Y. Life Ins. Co.*, No. 12 Civ. 5010 (PAC)(FM), 2013 U.S. Dist. LEXIS 8105, at *15 (S.D.N.Y. Jan. 15, 2013) ("[A] converted policy is wholly separate from any previous ERISA plan and, unlike a continuation policy, the employer has no role in administering the conversion plan."). The Welfare Fund cannot provide Ms. Kyi with redress under that hypothetical scenario of a converted individual policy. *Justice v. Kuhnapfel*, 985 F. Supp. 2d 334, 337 (E.D.N.Y. 2013) (deciding plaintiff lacked standing because neither the defendants nor the court could redress injury by a favorable decision); *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1202-03 (11th Cir. 2021); *E.L. v. Voluntary Interdistrict*

---

[8] Ms. Kyi obtained Power of Attorney for Mr. Win on May 17, 2019. Compl. ¶ 33; Compl. Ex. H.

*Choice Corp.*, No. 4:16CV629 RLW, 2016 U.S. Dist. LEXIS 92058, at *17-18 (E.D. Mo. July 15, 2016) ("[T]he Court also holds that Plaintiff lacks standing because VICC cannot redress Plaintiffs injury.").

*Fourth*, to the extent Ms. Kyi seeks benefits under either the discontinued group life insurance policy *or* a hypothetical converted individual policy, she does not allege (nor can she) that the Welfare Fund can now or ever provide the remedies she requests. As discussed, the Welfare Fund was terminated in 2021 due to "serious cashflow issues." Ex. 3; Ex. 4. The Trust Agreement and Trust have been dissolved. Ex. 4. There is no "fund" remaining to pay any alleged benefit. *See Kuhnapfel*, 985 F. Supp. at 337 (plaintiff lacked Article III standing where defendant could not provide remedy requested); *E.L.*, 2016 U.S. Dist. LEXIS 92058, at *17 (plaintiff lacked Article III standing where defendant could not provide remedy requested).

In short, Ms. Kyi has not and cannot allege that the Welfare Fund caused or could redress her alleged injuries, so she lacks standing. Ms. Kyi challenges no conduct traceable to the Welfare Fund that caused her alleged injuries, and she fails to allege that the Welfare Fund has any ability to redress her alleged injuries. Thus, this Court lacks subject matter jurisdiction and should dismiss Ms. Kyi's claims against the Welfare Fund. Fed. R. Civ. P. 12(b)(1).

## II.     Ms. Kyi fails to state a claim against the Welfare Fund.

### A.     Ms. Kyi fails to allege that Mr. Win was entitled to any life insurance benefits.

With Count I, Ms. Kyi claims she is entitled to the life insurance benefits under Mr. Win's former group life insurance policy with Amalgamated. Compl. ¶ 73. This claim fails based on Ms. Kyi's allegations in the Complaint and its exhibits. Ms. Kyi alleges that Mr.

Win did not receive the Cancellation Notice. Compl. ¶¶ 29, 67. Yet, at the same time, Ms. Kyi acknowledges that lack of notice results only in an extension of the conversion period to 90 days. Compl. ¶ 36. There is no dispute that Mr. Win did not elect conversion within the 90 days; therefore, he did not timely convert his policy.

Ms. Kyi also alleges that Mr. Win was entitled to an extension of the life insurance policy "while he was disabled." Compl. ¶¶ 18, 59, 68. This argument also fails. Mr. Win was not entitled to a disability extension at the time of the May 1, 2019, cancellation of his coverage and he did not convert. Compl. Ex. R at 111. Only those with active group coverage have conversion rights, and Mr. Win did not have such coverage at the time the Welfare Fund ceased providing benefits due to a cessation in employer contributions. Compl. Ex. R at 111; Ex. 3; Ex. 4. Moreover, if Mr. Win fell ill in February 2019, then under the Policy he would not be eligible for total disability until November 2019—months after the cessation of Welfare Fund benefits. Compl. ¶ 69; Compl. Ex. N at 68-70; Compl. Ex. R at 110 (Appeal Denial citing to Policy, Ex. 5, at 17, explaining that under the Policy an individual is "totally disabled" if he or she has not received pay for any work for 9 continuous months, and must be insured at the time of disability, and Mr. Win was not insured in November 2019 because he did not convert).

Finally, during the claims process, counsel for Ms. Kyi asked the Welfare Fund if there was "any way the Union can work with the life insurance to have them make an exception under these circumstances?" Compl. Ex. N at 70. Thus, even counsel for Ms. Kyi acknowledges that she was not entitled to the benefit under the plain terms of the Policy, and an "exception" would be necessary.   There is no obligation under ERISA, the Welfare Fund, or the Policy to override the express terms and grant extensions.  Indeed,

doing so would violate the Plan and ERISA.  29 U.S.C. § 1104(a)(1)(D).

Because Ms. Kyi has not and cannot allege that she or Mr. Win were wrongly denied benefits, Count I should be dismissed for failure to state a claim.

### B.  The Welfare Fund cannot commit a fiduciary breach because it is not a fiduciary.

To state a claim under ERISA for breach of fiduciary duty, it is well-established that the defendant must be a fiduciary of the plan at issue. *See Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 730 (2d Cir. 2013). As a matter of law, a plan is not a fiduciary and cannot be a named defendant in a breach of fiduciary duty action. *See* 29 U.S.C. § 1002(9) (defining "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."); *id.* § 1002(21)(A) ("a person is a fiduciary with respect to a plan to the extent . . ."); *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 n.8 (2d Cir. 1983) ("We find it difficult to imagine a situation in which a" plan could be a fiduciary); *Rubinstein v. CIGNA Life Ins. Co.,* No. CV11-1750(SJF)(WDW), 2011 U.S. Dist. LEXIS 132328, at *20-22 (E.D.N.Y. Sept. 27, 2011) (collecting cases from Second Circuit finding that a plan is not a fiduciary); *Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991) (holding that an ERISA plan "cannot, as an entity, act as a fiduciary with respect to its own assets," and "cannot be sued for breach of fiduciary duty"); *Reininger v. AZDEL, Inc. Ret. Plan*, 768 F. Supp. 2d 825, 828-29 (W.D.N.C. 2011) (dismissing breach of fiduciary duty claim against ERISA plan because "the Plan is not a fiduciary"); *Ranke v. Sanofi-Synthelabo, Inc.*, No. 04-1618, 2004 U.S. Dist. LEXIS 22427, at *5-6 (E.D. Pa. Nov. 2, 2004) (same).

In short, Count II should be dismissed because the Welfare Fund is not a fiduciary to itself, and, therefore, cannot have breached any fiduciary duty.[9]

**C.**   **Ms. Kyi fails to allege the elements of estoppel in an ERISA context.**

Count III should be dismissed because Ms. Kyi has failed to allege the elements of equitable or promissory estoppel in an ERISA context. Further, Ms. Kyi must allege extraordinary circumstances. *Id.*

To state a claim for equitable estoppel under ERISA, a plaintiff must allege a: "(1) material representation, (2) reliance and (3) damage." *Berg v. Empire Blue Cross & Blue Shield*, 105 F. Supp. 2d 121, 129-30 (E.D.N.Y. 2000) (citing *Lee v. Burkhart*, 991 F.2d 1004, 1008 (2d Cir. 1993)). Likewise, to state a claim for promissory estoppel under ERISA a plaintiff must allege "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Berg*, 105 F. Supp at 129-30 (quoting *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d

---

[9] The crux of Ms. Kyi's fiduciary breach claim relates to conduct by Mr. Asprea. But Mr. Asprea is not named as a defendant in this case.  Even so, Ms. Kyi cannot plausibly allege that Mr. Asprea was a fiduciary to the Welfare Fund. The Summary Plan Description makes clear that the Plan Administrator of the Welfare Fund is the Board Trustees, not Mr. Asprea. Ex. 2 at 6 ("The Plan Administrator is the Board of Trustees."). Ms. Kyi's conclusory allegations that "Asprea was acting in his fiduciary capacity" is insufficient; particularly when the SPD states otherwise. Compl. ¶¶ 76, 79; *Hannan v. Hartford Fin. Servs., Inc.*, 688 F. App'x 85, 89 (2d Cir. 2017) ("We thus agree with the district court that the complaint did not sufficiently allege that Hartford had or exercised any discretionary authority over the Plan or its assets with respect to the setting of the contract terms governing the Plan, and thus Hartford is not subject to fiduciary liability. *See* § 1002(21)(A)."); *see also Walker*, 492 F. App'x at 565 ("The Department of Labor interpretive bulletins also define the term 'fiduciary.' According to the bulletin, a person who confers only 'administrative functions' such as 'advising participants of their rights and options under the plan' are not fiduciaries because they have 'no power to make any decisions as to plan policy, interpretation, practices or procedures.' 29 C.F.R. § 2509.75-8 D-2. Because the ERISA plan did not grant discretionary authority or control over the plan and ADP performed only ministerial duties with respect to the ERISA plan, the district court properly found that ADP is not an ERISA fiduciary.").

Cir. 1999)). Though far from clear, Ms. Kyi's "estoppel" claim fails for several reasons.

*First,* Ms. Kyi alleges that the SPD constituted a "promise" that Mr. Win's life insurance would be extended during the period that he was totally disabled. Compl. ¶ 80-82. But, as described *supra* p. 17-18, Mr. Win would not have been "totally disabled" under the Policy until November 2019, well-after his coverage had lapsed and the Welfare Fund ceased providing benefits. Compl. Ex. R at 111-12 (Appeal Denial explaining why there was no conversion right based on total disability under the Policy or Summary Plan Description).

*Second,* Ms. Kyi alleges that she had a conversation with Mr. Asprea in July 2019 about Mr. Win's "employee benefits" and Mr. Asprea failed to provide her with information about the cancellation of the group insurance policy during that conversation. Compl. ¶ 83. As noted above, Ms. Kyi does not and cannot allege Mr. Asprea was a fiduciary to the Welfare Fund, *supra* note 9. In any event, there is no allegation that Ms. Kyi specifically inquired about the life insurance benefit and was provided with any misleading information. Indeed, based on Ms. Kyi's own allegations, the group life insurance policy was just never mentioned during the conversation. Compl. ¶¶ 39-42. Thus, by Ms. Kyi's own admission, Mr. Asprea did not provide her with any misleading, incomplete, or inaccurate information about the Policy or Mr. Win's conversion rights.

Instead, Ms. Kyi appears to claim that Mr. Asprea should have known Mr. Win did not receive the Cancellation Notice in the mail and *anticipated* that Ms. Kyi was interested in the conversion and proactively informed her about this option. *See* Compl. ¶ 83. But that is not what the law requires. The Welfare Fund or anyone acting on its behalf is simply not required "to investigate each participant's circumstances and prepare advisory opinions. .

. .” *Bernstein v. Metro. Life Ins. Co.*, 453 F. Supp. 2d 554, 560 (D. Conn. 2006) (quoting *Chojnacki v. Ga.-Pac. Corp.*, 108 F.3d 810, 817-18 (7th Cir. 1997)); *Dobson v. Hartford Fin. Servs. Grp., Inc.*, 389 F.3d 386, 401 (2d Cir. 2004) (“The authorities do not suggest that the disclosure obligation applies to every piece of information a beneficiary might find useful in seeking a recovery from the plan.”). Creating such a requirement would impose an enormous burden and expense on plan administrators to remain apprised of every employee and their particular circumstances. *See Bernstein*, 453 F. Supp. 2d at 560; *Barrs v. Lockheed Martin Corp.*, 287 F.3d 202, 207 (1st Cir. 2002). To hold otherwise would improperly convert fiduciaries into personal financial counselors for countless individual participants. *See Bernstein*, 453 F. Supp. 2d at 559-60 (“[U]nder ERISA the administrator is not a *personal trustee* but rather a fiduciary for the *limited purpose* of overseeing whatever plan it creates for what may be thousands of employees and other beneficiaries.”) (emphasis added)); *Barrs*, 287 F.3d at 207-08 (explaining that courts’ rejection of such requirements “reflects ERISA’s focus on limited and general reporting and disclosure requirements” and “reflects the enormous burdens an obligation to proffer individualized advice would inflict on plan administrators”).

Put simply, the Welfare Fund—or any of its representatives—had no additional fiduciary duty to anticipate and proactively notify Ms. Kyi of the termination of the group policy. *Bernstein*, 453 F. Supp. 2d at 559-60; *Barrs*, 287 F.3d at 207-08 (“Absent a promise or misrepresentation, courts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances.”). To expect Mr. Asprea or any of the Welfare Fund’s fiduciaries to constantly fact-check individual participants is an untenable

notion. *See Walker*, 492 F. App'x at 566 (no ERISA violation where SPD contained notice of conversion right, and defendants mailed conversion notice to last known addresses of participant and had no reason to believe addresses were not accurate).

*Third*, and finally, to state a claim for estoppel Ms. Kyi must allege "extraordinary circumstances." "Extraordinary circumstances requires a 'remarkable consideration' such as the use of a promise of benefits to intentionally induce behavior on employee's part." *Berg*, 105 F. Supp at 130 (citing to *Aramony*, 191 F.3d at 151 and *Devlin v. Transp. Commc'ns Int'l Union*, 173 F.3d 94, 102 (2d Cir. 1999). There are no such circumstances alleged here. The Welfare Fund sent Mr. Win a Cancellation Notice to the address it had on file. Unfortunately, he had not notified the Welfare Fund of a change of address, so Ms. Kyi claims he did not receive it. Compl. ¶ 29. And, as a result, his life insurance policy lapsed. There are no allegations of any actions intended to deceive or induce any particular behavior. The facts simply do not meet an "extraordinary" standard.

Ms. Kyi has not and cannot allege the elements of estoppel in an ERISA context against the Welfare Fund, or any requisite extraordinary circumstances, so Count III against the Welfare Fund should be dismissed.

**D.**  **Ms. Kyi has no basis to bring a claim against the Welfare Fund under the FMLA.**

The FMLA obligates an *employer* to maintain an employee's coverage under any group health plan for the duration of the FMLA leave. *See* 26 U.S.C. § 2614(c); Compl. Ex. R at 108. It also prohibits the loss of employment benefits accrued prior to the date the leave commenced, but that obligation is enforceable against the *employer*. 26 U.S.C. §§ 2614(a), 2615, 2617. Compl. Ex. R at 108. As discussed, the Welfare Fund was a trust fund—it was not ever Mr. Win's employer. Therefore, the Welfare Fund is not a proper

defendant to any FMLA claim. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (an individual may be held liable under the FMLA only if she is an employer); *Horyczun v. Miller Env't Grp., Inc.*, No. 22-CV-162 (HG) (SIL), 2022 U.S. Dist. LEXIS 160430, at *5 (E.D.N.Y. Sept. 6, 2022) ("To make out a *prima facie* claim under the FMLA, Plaintiff must plead facts plausibly alleging that Defendant [ ] was his employer under the FMLA. Under the FMLA, the legal entity that employs the employee [ ] is deemed to be the employer. See 29 C.F.R. § 825.104(c).").

**E.     ERISA preempts Ms. Kyi's claim for breach of contract.**

The Welfare Fund is an employee welfare benefit plan governed by ERISA. Ex. 2 at 63 ("As a participant in the Teamsters Local 277 Welfare Fund Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA)."). Ms. Kyi concedes as much. Compl. ¶¶ 2, 66, 73, 79; Compl. Ex. R at 117 (informing Ms. Kyi of right to bring civil action pursuant to ERISA); Ex. 2 at 63-64 (SPD explaining right to bring a civil action pursuant to ERISA).

ERISA is a "comprehensive" and "closely integrated regulatory system" that is "designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand Co. v. McClendon* 498 U.S. 133, 137 (1990). To that end, ERISA by its terms expressly preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (emphasis added.) The term "state law" encompasses not only statutes but also common law claims for relief. See 29 U.S.C. § 1144(c)(1).) A state law "relate[s] to" an employee benefit plan, and is thus preempted by ERISA, if it has: (1) a "reference to" an ERISA plan; or (2) an impermissible "connection with" an ERISA plan. *Gobeille v. Liberty Mut. Ins. Co.* 577 U.S. 312, 319-20 (2016) (citations omitted.) The Supreme Court has held that if a court's

inquiry must be "directed to" the terms of the plan in any way, then a state law cause of action "relates to" an ERISA plan and is preempted. *Ingersoll-Rand*, 498 U.S. at 140.

In this regard, it is well-established that common law claims for breach of contract are preempted by ERISA. *Amron v. Yardain Inc. Pension Plan*, No. 18 Civ. 11336 (LGS), 2019 U.S. Dist. LEXIS 210096, at *20-21 (S.D.N.Y. Dec. 5, 2019) ("The contract claim alleges that 'Defendants breached their contract with Plaintiff by refusing to Plaintiff the properly valued benefits, as set forth herein.' As the contract claim is premised on the Plan itself and the denial of benefits that is the basis for Plaintiff's claim under ERISA § 502(a)(1)(B), the contract claim is appropriately dismissed as preempted by ERISA.); *see also Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008); *Neurological Surgery, P.C. v. Siemens Corp.*, No. 17 Civ. 3477, 2017 U.S. Dist. LEXIS 206010, at *13 (E.D.N.Y. Dec. 12, 2017).

Ms. Kyi's breach of contract claim is nothing more than a claim for benefits under the Policy and, therefore, is preempted by ERISA and should be dismissed.

### III.   Ms. Kyi's claims against the Welfare Fund should be dismissed with prejudice.

Finally, Ms. Kyi's claims against the Welfare Fund should be dismissed with prejudice because any amended complaint would be futile. Amendment is futile where there is a substantive problem with a cause of action that cannot be cured by better pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also McCabe v. Lifetime Entm't Servs., LLC*, No. 17-CV-908-ERK-SJB, 2018 U.S. Dist. LEXIS 3212, at *19-20 (E.D.N.Y. Jan. 4, 2018) (quoting *Rivera v. Governor of N.Y.*, 92 F. App'x 25, 26 (2d Cir. 2004)).

In this case, Ms. Kyi has not and cannot allege that the Welfare Fund caused or can redress her claimed injuries.  No amendment to her Complaint can change that. As such,

the Welfare Fund respectfully asks the Court to dismiss Ms. Kyi's Complaint against it with prejudice. *Felix v. Simon*, 303 F. App'x 21, 22 (2d Cir. 2008); *Algarin v. NYC Health + Hosps. Corp.*, No. 1: 22-cv-8340 (JLR), 2023 U.S. Dist. LEXIS 108666, at *41-42 (S.D.N.Y. June 23, 2023) (dismissing complaint with prejudice because there was no indication as to how the plaintiff would cure the pleading deficiencies.).

<u>**CONCLUSION**</u>

For at least the foregoing reasons, the Welfare Fund respectfully requests this Court dismiss Ms. Kyi's claims against it with prejudice.

*/s/ Steven Penaro*
Steven Penaro
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
+1 (212) 210-9460
steve.penaro@alston.com

Adam Adcock
D.C. Bar No. 1672136 admitted *pro hac vice*
**ALSTON & BIRD LLP**
950 F Street, NW
Washington, DC 20004-1404
+1 (202) 239-3018
adam.adcock@alston.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2023, a copy of the foregoing was sent via electronic mail and U.S. First Class Mail to the following *pro* se Plaintiff in accordance with this Court's Order related to same:

> Khin San Kyi
> 145 Leonard Road
> Rochester, NY 14616
> Tel.: 347-447-6878
> Email: kskyi0791@gmail.com

*/s/ Steven Penaro*

Steven Penaro
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
+1 (212) 210-9460
steve.penaro@alston.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KHIN SAN KYI,<br><br>   Plaintiff,<br><br>  v.<br><br>4C FOODS CORP., AMALGAMATED LIFE INSURANCE CO., and TEAMSTERS LOCAL 277 WELFARE FUND,<br><br>   Defendants. | CIVIL ACTION 1:22-cv-6301-PKC-LB<br>Chen, J.<br>Bloom, M.J. |

## NOTICE TO PRO SE LITIGANT WHO OPPOSES A RULE 12 MOTION SUPPORTED BY MATTERS OUTSIDE THE PLEADINGS

The defendant in this case has moved to dismiss or for judgment on the pleadings pursuant to Rule 12(b) or 12(c) of the Federal Rules of Civil Procedure, and has submitted additional written materials. This means that the defendant has asked the Court to decide this case without a trial, based on these written materials. You are warned that the Court may treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For this reason, THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing sworn affidavits as required by Rule 56(c) and/or other documents. The full text of Rule 56 of the Federal Rules of Civil Procedure is attached. In short, Rule 56 provides that you may NOT oppose the defendant's motion simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising specific facts that support your claim. If you have proof of your

-24-

claim, now is the time to submit it. Any witness statements must be in the form of affidavits. An affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial. You may submit your own affidavit and/or the affidavits of others. You may submit affidavits that were prepared specifically in response to defendant's motion. If you do not respond to the motion on time with affidavits and/or documents contradicting the facts asserted by the defendant, the Court may accept defendant's facts as true. Your case may be dismissed and judgment may be entered in defendant's favor without a trial. If you have any questions, you may direct them to the Pro Se Office.

*/s/ Steven Penaro*
Steven Penaro
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
+1 (212) 210-9460
steve.penaro@alston.com
