UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
KHIN SAN KYI,

                Plaintiff,

      - against -

4C FOOD CORP.,[1] AMALGAMATED LIFE
INSURANCE CO., and TEAMSTERS
LOCAL 277 WELFARE FUND,

                Defendants.
------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-6301 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

       This *pro se* case arises from a tragic series of events. Plaintiff Khin San Kyi ("Plaintiff" or "Kyi") is a Burmese immigrant. After the illness and death of her husband, Tun Win ("Win"), Kyi sought to recover under Win's life insurance policy ("the Policy") through his employer, 4C Foods Corp. ("4C Foods"). As explained below, Kyi was unable to do so. She then brought this action, alleging that Defendants 4C Foods, Amalgamated Life Insurance Company ("Amalgamated Life"), and Teamsters Local 277 Welfare Fund ("the Welfare Fund") (collectively, "Defendants") violated federal and state law by refusing to pay out Win's life insurance policy to her. For the reasons described below, Plaintiff's case must be dismissed in its entirety.

---

[1] This Defendant's name is 4C Foods Corp., not 4C Food Corp.

## BACKGROUND

Plaintiff is a Burmese immigrant with limited English proficiency. (11/30/2023 Ltr. from Kyi, Dkt. 33 at ECF 1; Compl., Dkt. 1, at ECF 6.)[2] Her husband, Win, worked for 4C Foods beginning in 2008. (Compl., Dkt. 1 at ECF 3.) 4C Foods participated in a welfare fund, the Teamsters Local 277 Welfare Fund. (*Id.*) The Welfare Fund provided certain benefits to employees of member companies, including 4C Foods. (*Id.*) Among other benefits, the Welfare Fund provided "life insurance benefits" to plan participants. (*Id.*) Amalgamated Life provided a group life insurance policy that covered the Welfare Fund's members. (*Id.*) The Welfare Fund provided a Summary Plan Description ("SPD") describing "the most important features of the [benefit] Plan." (*Id.* at ECF 16.) The SPD explained that "[i]f you are actively working in covered employment with a year or more of service, your life is insured for $10,000." (*Id.* at ECF 3 (internal quotation marks omitted).)

In 2019, when Win was 51 years old, he was diagnosed with "early onset dementia with behavioral disturbances, major neurocognitive disorder, and severe memory loss." (*Id.* at ECF 4.) As a result, Win was totally disabled. (*Id.*)[3] When he first became disabled, Win requested leave under the Family and Medical Leave Act ("FMLA"). (*Id.*) His FMLA leave was retroactively approved beginning February 11, 2019. (*Id.*) Despite Win being on FMLA leave, on April 19, a 4C Foods employee sent an email to the Welfare Fund manager, Frank Asprea ("Asprea"), advising Asprea that Win "has been on FMLA and recently resigned." (*Id.*) Win, however, had not resigned and was still on FMLA leave at that time. (*Id.* at ECF 5.)

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] In May 2019, Win executed a Power of Attorney, naming Plaintiff as his agent. (Compl., Dkt. 1 at ECF 5.)

On April 24, 2019, the Welfare Fund sent a letter to Win, advising him that his employee benefits were being cancelled effective May 1, 2019 because he had not met the work requirements to be covered by the benefit plan.  (*Id.*)  The letter also stated that Win "had 60 days to covert his life insurance policy from a group policy to an individual policy." (*Id.*)  Unfortunately, the Welfare Fund sent the letter to an address where Win and his family no longer lived, and so Win and Kyi never received it.  (*Id.* at ECF 5, 6.)

In early May 2019, Win was notified that his FMLA leave period would conclude on May 6, 2019.  (*Id.* at ECF 5.)  A few weeks later, Win was notified that though his FMLA leave had expired, 4C Foods had approved his request for an extended leave of absence.  (*Id.* at ECF 55.)

In June 2019, the Welfare Fund ceased providing benefits, including its group life insurance policy through Amalgamated Life, due to "serious cashflow problems."  (*Id.* at ECF 68.)  Because of this, at that time, members of the group plan were eligible to convert to an individual policy for a limited period.  (*Id.* at ECF 6, 68.)  Win never received notice of the Welfare Fund's discontinuation of the group life insurance policy.  (*Id.* at ECF 6.)

In July 2019, Plaintiff learned that her husband's condition was terminal.  (*Id.*)  Given the seriousness of Win's condition, Plaintiff called the Welfare Fund to inquire about Win's benefits.  (*Id.*)  She reached the fund manager, Asprea, and requested a Burmese interpreter due to her limited English proficiency.  (*Id.*)  Asprea told Plaintiff that the Welfare Fund could not provide an interpreter.  (*Id.*)  Still, Plaintiff was able to communicate to Asprea that her husband was very ill and asked about her husband's "union benefits."  (*Id.* at ECF 7.)  Asprea informed Plaintiff that her husband was not yet eligible for a pension but did not give any information about his Welfare Fund benefits, including his life insurance.  (*Id.*)  Plaintiff called Asprea a second time in July 2019, and Asprea once again told her that no interpreter could be provided.  (*Id.*)  In October 2019,

3

Plaintiff and a hospital social worker traveled to the Welfare Fund's office and met with Asprea. (*Id.*)  Only then did Plaintiff learn that Win's Welfare Fund benefits had already been terminated in June 2019.  (*Id.*)

In March 2020, an attorney wrote to Asprea on Plaintiff's behalf in an attempt to retain Win's life insurance coverage through the Welfare Fund in accordance with an SPD provision that required a waiver of the Policy premium and extension of coverage in the event that a plan participant became totally disabled.  (*Id.* at ECF 8, 9.)

Tun Win died in April 2020.  (*Id.*)  Some months later, in August 2020, the Welfare Fund sent a letter in response to Plaintiff's then-attorney.  (*Id.* at ECF 8–9.)  In its response, the Welfare Fund stated that it denied Plaintiff's claim for the life insurance benefit under the Policy, explaining that Win had not been eligible for a waiver of the Policy's premium because, under the terms of the Policy, such a waiver was only available if a participant was totally disabled for a period of nine continuous months while they were insured.  (*Id.* at ECF 9, 71.)  Because Win's coverage had been cancelled before he had been totally disabled for nine months, he was not eligible for the premium waiver or continued coverage.  (*Id.* at ECF 71–72.)  Moreover, the Welfare Fund explained that the time period for Win to convert his group life insurance to an individual policy had expired in 2019, 60 days after his coverage lapsed.  (*Id.* at ECF 68–69.)  In March 2021, Plaintiff's then-attorney appealed the denial of coverage.  (*Id.* at ECF 9.)  The Welfare Fund denied the appeal.  (*Id.*)

On October 14, 2022, Plaintiff initiated the instant action, alleging several causes of action, including (1) wrongful denial of benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"); (2) breach of fiduciary duty in violation of ERISA; (3) promissory estoppel; (4) interference with FMLA rights; and (5) breach of contract.  (*Id.* at ECF 10–13.)  All

4

three Defendants have moved to dismiss the claims against them, variously arguing lack of standing, failure to state a claim, and absence of causation. (*See* 4C Foods Corp. Mem. of Law in Supp. of Mot. to Dismiss, Dkt. 35-1 at 1, 7–12; Amalgamated Life Mem. of Law in Supp. of Mot. to Dismiss, Dkt. 36-1 at 1, 8–13; Welfare Fund Mem. in Supp. of Mot. to Dismiss ("Welfare Fund Br."), Dkt. 37-1 at 1–2, 11–22.)

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the pleadings stage, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guardian Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks and citations omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guardian Corp.*, 712 F.3d at 717 (quoting *Iqbal*, 556 U.S. at 679). Therefore, a plaintiff's "[b]ald assertions and conclusions of law" will not be "adequate to withstand a motion to dismiss." *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 524–25 (S.D.N.Y. 2013) (quoting *Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y. 2010)).

5

Pleadings submitted by *pro se* plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and the Court is required to read a *pro se* plaintiff's complaint liberally and interpret it as raising the strongest arguments it suggests, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

As a general matter, in considering a motion to dismiss, courts can consider documents that are "attached to the complaint" or "incorporated into [it] by reference." *ATSI Commc'n Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In this regard, courts lend a "special solicitude" to *pro se* plaintiffs. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). Because of this "special solicitude," a court may "consider materials outside of the [c]omplaint," including "materials that a *pro se* plaintiff attaches to [their] opposition papers" in deciding a motion to dismiss. *Ceara v. Deacon*, 68 F. Supp. 3d 402, 410–11 (S.D.N.Y. 2014) (internal citations omitted).

## DISCUSSION

### I. Materials Considered by the Court

#### A. Plaintiff's Materials

Plaintiff attaches a series of exhibits to her Complaint and has also submitted several letters to the Court. (*See* Compl. Dkt. 1 at ECF 15–120; 11/30/2023 Ltr. from Kyi, Dkt. 33; 11/30/2023 Ltr. from Kyi, Dkt. 34; 12/13/2023 Ltr. from Kyi with attachments, Dkt. 38.) Typically, courts do not consider materials extrinsic to the complaint when deciding a motion to dismiss. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013). However, as explained above, when a plaintiff proceeds *pro se*, a court may consider "materials outside of the complaint," including materials attached to the complaint or otherwise submitted by plaintiff to the Court. *Ceara*, 68 F. Supp. 3d at 410–411. Because Plaintiff is proceeding *pro se*, the Court

considers the materials that she attached to her complaint and the letter she submitted in deciding the instant motions.

### B.  The Welfare Fund's Materials

The Welfare Fund also attaches several documents to its motion to dismiss, including: (1) the trust agreement that initially created the Welfare Fund (*see* Dkt. 37-2); (2) the SPD for the Welfare Fund's benefits plan (*see* Dkt. 37-3); (3) the June 19, 2019 Notification Letter regarding the Welfare Fund's Discontinuance of Benefits/Dissolution (*see* Dkt. 37-4); (4) the Welfare Fund's trust termination resolution (*see* Dkt. 37-5); and (5) the Policy (*see* Dkt. 37-6).  Of course, unlike Plaintiff, the Welfare Fund does not benefit from the "special solicitude" afforded to *pro se* plaintiffs.  *See Ceara*, 68 F. Supp. 3d at 410–11.

Still, as a general matter, the Court can consider documents that are "attached to the complaint" or "incorporated into [it] by reference."  *ATSI Commc'n Inc.*, 493 F.3d at 98.  As the Welfare Fund describes in detail, the documents that it attaches to its motion to dismiss are either referenced in Plaintiff's Complaint and/or partially excerpted in her attachments to it.  (*See* Welfare Fund Br., Dkt. 37-1 at 10).  As such, the Court can and does consider these documents in resolving the instant motions.

## II.   Standing

The Welfare Fund argues that Plaintiff does not have standing to bring claims against it.  (*See id.* at 11–13.)  If a plaintiff lacks Article III standing, a court has no subject matter jurisdiction to hear their claim.  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).  To establish standing, a plaintiff must demonstrate that (1) they "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (2) "the injury was caused by the defendant"; and (3) "the injury would likely be redressed" by a favorable decision.  *Thole v. U. S. Bank N.A*, 590 U.S. 538,

540 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Here, there is no question that Plaintiff has alleged a concrete and particularized injury that she suffered: being denied the $10,000 payout from Win's life insurance policy.  (*See* Compl., Dkt. 1 at ECF 1, 3, 10, 12, 13.)

Instead, the Welfare Fund argues that it did not cause Plaintiff's injuries because it "did not cause Win's group life insurance policy to lapse or cause any failure to convert it to an individual policy." (Welfare Fund Br., Dkt. 37-1 at 11.)  In addition, the Welfare Fund argues that it could not have caused Plaintiff's injury because it was not "responsible for . . . payment of benefits under any . . . policy." (*Id.* at 12.)  To show causation for the purposes of Article III standing, the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)) (internal quotation marks omitted).  At the pleading stage, a plaintiff's burden to allege traceability between the injury and the challenged act "is relatively modest." *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013), *superseded on other grounds by statute*, *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483 (2023) (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)) (internal quotation marks omitted).  Moreover, a showing of causation does not require the plaintiff to show that the defendant's act was the only cause of an injury; a "but for" test will satisfy. *M&T Mortg. Corp. v. White*, No. 04-CV-4775 (NGG) (VVP), 2006 WL 47467, at *5 (E.D.N.Y. Jan. 9, 2006) (quoting *Duke Power Co. v. Carolina Env'l Study Grp., Inc.*, 438 U.S. 59, 81 (1978)); *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 262 (E.D.N.Y. 2021)).  Further, the plaintiff's injury cannot be "self-inflicted" or "so completely due to the plaintiff's own fault as to break the causal chain." *Bandler*

8

*v. Town of Woodstock*, 832 F. App'x 733, 734 (2d Cir. 2020) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000)) (internal quotation marks omitted).

In light of this standard, the Welfare Fund's argument that it did not cause Plaintiff's injury fails. Though the Welfare Fund was not the entity responsible for paying out death benefits pursuant to the Policy, the Welfare Fund's actions were fairly traceable to Plaintiff's injury. *See Lujan*, 504 U.S. at 560–61. After all, in the April 24, 2019 letter that the Welfare Fund sent to Win, it stated "[w]e" (meaning the Welfare Fund) "are cancelling your . . . Group Life Insurance effective 5-1-19." (Compl., Dkt. 1 at ECF 37.) This statement at least raises an inference that the Welfare Fund's actions were a "but for" cause of Win's coverage being cancelled, which ultimately prevented Plaintiff's from receiving the death benefit. *See M&T Mortg. Corp.*, 2006 WL 47467, at *5. Moreover, the Welfare Fund's cancellation of Win's group insurance coverage allegedly stemmed from its own erroneous belief that Win had resigned from 4C Foods by April 19, 2019. (Compl., Dkt. 1 at ECF 35, 37 (4C Foods employee's April 19, 2019 email to Asprea erroneously reporting that Win had "recently resigned" and Welfare Fund's April 24, 2019 letter advising Win that his employee benefits were being cancelled because he had not met the work requirements to be covered by the benefit plan and that he had 60 days to covert his life insurance policy).) As such, Plaintiff plausibly alleges that the Welfare Fund caused her injury.

The Welfare Fund also argues that Plaintiff does not have standing to bring claims against it because the Welfare Fund cannot redress her injury. (Welfare Fund Br., Dkt. 37-1 at 13.) To satisfy the redressability requirement, a plaintiff must establish that "it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief [the] plaintiff seeks in bringing suit." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008) (internal quotation marks omitted); *see also Lujan*, 504 U.S. at 561 ("[I]t must be 'likely,' as opposed to

9

merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (quoting *Simon*, 426 U.S. at 38, 43)). Plaintiff's injuries are redressable if the Court could order relief that would compensate her for her losses or "eliminate any effects caused by [the] defendant[s'] challenged conduct." *Guan*, 530 F. Supp. 3d at 263 (citing *Janfeshan v. U.S. Customs & Border Prot.*, No. 16-CV-6915 (ARR) (LB), 2017 WL 3972461, at *7 (E.D.N.Y. Aug. 21, 2017)) (internal quotation marks omitted).

As the Complaint itself alleges, due to "serious cashflow problems," the Welfare Fund ceased providing benefits as of June 2019. (Compl., Dkt. 1 at ECF 68.) And on December 31, 2021, the Welfare Fund and the trust agreement that initially created it were both fully and finally dissolved. (*See* Trust Termination Resolution, Dkt. 37-5 at 1.) The Welfare Fund, then, had already been dissolved by the time that Plaintiff filed this lawsuit in 2022. The Welfare Fund thus argues that "[t]here is no 'fund' remaining to pay any . . . benefit" to Plaintiff, were the Court to award one. (Welfare Fund Br., Dkt. 37-1 at 13; *see also* Dkt. 37-5 at 1.) Consequently, even if Plaintiff prevailed on her claims against the Welfare Fund and the Court ordered it to pay damages to Plaintiff, the Welfare Fund would not be able to do so. Thus, because Plaintiff's injury is not redressable by a favorable decision, she does not have standing to sue the Welfare Fund, and the claims against it must be dismissed.

### III. Plaintiff's Claims

#### A. Counts One and Two: ERISA Claims

Plaintiff brings two ERISA claims: one for wrongful denial of benefits and the other for breach of fiduciary duty. (*See* Compl., Dkt. 1 at ECF 10–11.) However, Plaintiff does not identify which Defendant(s) she brings these claims against. (*See id.*) As explained above in Part II, any claim against the Welfare Fund must be dismissed for lack of standing. *See supra* Part II. While

the failure to identify which Defendants are the subjects of these causes of action in itself warrants dismissal of these claims, given the Court's responsibility to extend "special solicitude" to Plaintiff due to her *pro se* status, *Hogan*, 738 F.3d at 515, the Court considers whether she has stated an ERISA claim against either of the remaining Defendants, 4C Foods or Amalgamated Life.

1. Count One: Wrongful Denial of Benefits

In her first ERISA claim, Plaintiff alleges that she was wrongfully denied her right to recover the death benefit under the terms of Win's employee benefit plan. (Compl., Dkt. 1 at ECF 10.)  This type of claim can only be brought against "the plan and the administrators and the trustees of the plan." *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005) (quoting *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998)).  According to the SPD, the Plan Administrator was the Welfare Fund. (*See* SPD, Dkt. 37-3 at ECF 2.)  Consequently, the Welfare Fund, whom Plaintiff does not have standing to sue, would be the only proper defendant (of the three Defendants that she has named) for this claim.  The denial of benefits claim therefore must be dismissed.

2. Count Two: Breach of Fiduciary Duty

Plaintiff also brings a claim for breach of fiduciary duty under ERISA. (Compl., Dkt. 1 at ECF 10–11.)  "To state a claim for breach of fiduciary duty under ERISA, at minimum the Complaint must allege 1) that defendant was a fiduciary who, 2) was acting within his capacity as a fiduciary, and 3) breached his fiduciary duty." *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 353 (S.D.N.Y. 2009). An ERISA fiduciary is an individual "who possess[es] the 'authority to control and manage the operation and administration of the Plan.'" *Id.* (quoting 29 U.S.C. § 1102(a)(1)).  The plan administrator listed in a plan's documents "is automatically a named fiduciary[.]" *Id.* "In addition to named fiduciaries, ERISA also defines fiduciaries 'in *functional*

11

terms of control and authority over the plan.'" *Id.* at 354 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)).

With respect to Plaintiff's breach of fiduciary duty claim, however, it is clear that she intended to bring it against the Welfare Fund and no other Defendant. The allegations therein relate only to the actions of Asprea, the fund manager who worked for the Welfare Fund. (*See* Compl., Dkt. 1 at ECF 10–11 (alleging that "Asprea's failure to provide critical information regarding Win's life insurance benefits to Plaintiff . . . constituted a breach of fiduciary duty").) Because Plaintiff does not have standing to sue the Welfare Fund, which is the only proper defendant for this claim, it too must be dismissed.[4]

### B. Count Three: Promissory Estoppel Claim

Plaintiff brings a promissory estoppel claim against both Amalgamated Life and the Welfare Fund. (*See* Compl., Dkt. 1 at ECF 11–12.) As described above, however, all claims against the Welfare Fund must be dismissed. *See supra* Part II. With respect to her remaining promissory estoppel claim against Amalgamated Life, Plaintiff alleges that the SPD constituted a promise to Win by the Welfare Fund, and based on the SPD, she and Win "had a reasonable expectation that Win's life insurance policy would be extended during the period that he was totally disabled." (Compl., Dkt. 1 at ECF 11.)

"The basic elements of promissory estoppel . . . are (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996). In the ERISA context, a plaintiff must "adduce[ ] not only facts sufficient to support the four basic elements of promissory

---

[4] Plaintiff does not allege facts from which the Court could conclude that any of the other Defendants had functional control over the employee benefits plan such that they could be a proper defendant for this claim. (*See generally* Compl., Dkt. 1.)

12

estoppel, but facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well." *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999) (citations omitted); *see also Berg v. Empire Blue Cross & Blue Shield*, 105 F. Supp. 2d 121, 130 (E.D.N.Y. 2000). To meet the "extraordinary circumstances" requirement, "courts in this Circuit generally require plaintiffs 'to allege either intentional inducement or deception, inuring to the benefit of the defendant.'" *Est. of Kenyon v. L + M Healthcare Health Reimbursement Acct.*, 404 F. Supp. 3d 627, 634 (D. Conn. 2019) (quoting *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, No. 8-CV-9445 (WHP), 2008 WL 5329962, at *5 (S.D.N.Y. Dec. 9, 2008)).

Even liberally construed, Plaintiff's Complaint does not include any allegation that Amalgamated Life ever made any promise to her or to Win regarding the extension of Win's life insurance policy during the period of his total disability or any other extension. (*See generally* Compl., Dkt. 1.) Nor does Plaintiff plead that Amalgamated Life engaged in any "intentional inducement or deception," or any other extraordinary acts that might allow her to prevail on a claim for promissory estoppel. *Est. of Kenyon*, 404 F. Supp. 3d at 634; (*see generally* Compl., Dkt. 1).

Accordingly, Plaintiff's claim for promissory estoppel is dismissed.

### C. Counts Four and Five: FMLA Interference Claims

Plaintiff brings two claims for FMLA interference—one against 4C Foods and one against the Welfare Fund. (*See* Compl., Dkt. 1 at ECF 12.) Both must be dismissed. The claim against the Welfare Fund must be dismissed on standing grounds, as explained earlier. *See supra* Part II. With respect to the FMLA interference claim against 4C Foods, even reading Plaintiff's Complaint in the most favorable light, she has not stated a claim for FMLA interference. "[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible

13

employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 307 (2d Cir. 2017) (quoting *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016)) (internal quotation marks omitted).

As an initial matter, because Plaintiff was never an employee of 4C Foods, she cannot satisfy any of the elements of an FMLA interference claim. Furthermore, even assuming *arguendo*, that, as the spouse or beneficiary of a 4C Foods employee, Plaintiff could bring such a claim, the Complaint, on its face, demonstrates that 4C Foods granted Win 12 weeks of FMLA leave (*see* Compl., Dkt. 1 at ECF 4–5), which is the maximum amount provided by the FMLA, *see* 29 U.S.C. § 2612(a)(1)(D) (explaining that eligible employees are entitled "to a total of 12 workweeks of leave . . [b]ecause of a serious health condition"). As such, Win was not "denied [the] benefits to which [he] was entitled under the FMLA," *Shultz*, 867 F.3d at 307, and Plaintiff cannot state a claim for FMLA interference against 4C Foods.

Consequently, the Court dismisses both Counts Four and Five.

### D.  Count Six: Breach of Contract Claim

Plaintiff also brings a breach of contract claim against 4C Foods and the Welfare Fund. (*See* Compl., Dkt. 1 at 12–13.) Breach of contract claims that relate to ERISA-covered plans, however, are preempted by ERISA. *See, e.g.*, *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (affirming dismissal of breach of contract claims that "relate[d] to an employee benefit plan" (internal quotation marks and citations omitted)); *Amron v. Yardain Inc. Pension Plan*, No. 18-CV-11336 (LGS), 2019 WL 6619107, at *7 (S.D.N.Y. Dec. 5, 2019)

14

(holding that breach of contract claim relating to denial of benefits was preempted by ERISA); *Pronti v. CNA Fin. Corp.*, 353 F. Supp. 2d 320, 323–24 (N.D.N.Y. 2005) (similar). Consequently, Plaintiff's breach of contract claim is dismissed.

## CONCLUSION

While the Court recognizes the very unfortunate circumstances of this case—especially the seeming absence of any recourse or remedy for Plaintiff due to the Welfare Fund's insolvency—the Court's decision is constrained by the facts as alleged and the relevant law. All claims in the Complaint are dismissed with prejudice. The Court respectfully requests that the Clerk of Court enter judgment in this case and terminate it.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 17, 2024
      Brooklyn, New York